IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| RONALD DAVID SUTHERLAND, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 7:13-CV-00120-D-KA |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| Respondent. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION

By Order of Reference (ECF 40) this §2254 case was referred to the undersigned for a hearing, if necessary, and the entry of findings of fact, conclusions of law, and a recommendation. Sutherland was convicted on his pleas of guilty in Texas state court on twelve counts of burglary in three cases and was sentenced to concurrent terms of fifteen (15) years on each count. Sutherland's direct appeal was dismissed and his request for discretionary review was denied. Certiorari was denied by the Supreme Court. In a state habeas corpus proceedings following two remands from the Texas Court of Criminal Appeals, the trial court found that Sutherland's attorney did not render effective assistance due to his lack of preparation for trial and initially recommended relief. But on the trial court's subsequent findings following the second remand, the Court of Criminal Appeals denied relief holding that notwithstanding the ineffectiveness of his counsel, Sutherland's pleas were voluntarily made. Thus, the court ruled that the ineffectiveness of his counsel did not prejudice Sutherland.

By his petition for habeas corpus in this court, Petitioner Sutherland, a self-professed "writ

writer,"[1] attempts to blend  together assorted out-of-context events and statements occuring in his state court procedings to forge a key to his cell so as to obtain relief from the very sentence for which he bargained in the trial court.  For the reasons hereafter stated, I recommend to the District Court that Sutherland's petition be denied.

Sutherland's Alleged Grounds for Relief

By his federal petition Sutherland claims five grounds for relief:

(1)  Sutherland received ineffective assistance of counsel[2] amounting to a constructive denial of counsel because his trial attorney:

> (A) did not investigate the basic facts of his case;

> (B) failed to object to the sentencing proceedings or to judge-added terms of the plea agreement, provided erroneous advice to plead guilty, and forced Sutherland to negotiate his own plea agreement; and,

> (C) had a conflict of interest both because his attorney was on bond for a felony in the same county and because he represented two other co-defendants with conflicting interests to his own.

(2) Sutherland was denied counsel because the judge did not even read his sixteen page motion because he had once withdrawn his request to fire the attorney hired by a co-defendant's mother thereby forcing Sutherland to a decision to go to trial with the unprepared attorney or to negotiate a plea bargain without him.

(3) Sutherland was sentenced outside of the range applicable for a state jail felony in violation of his due process.

(4) Sutherland was wrongfully denied the right to a direct appeal.  Although he filed notices of appeal, his appeals were dismissed wrongfully.  Even before his guilty pleas,  he had filed motions to preserve his preserved his right to the attorney of his

---

[1]     ECF 45, p. 1. All citations herein to the state court records shall be to the ECF docket number, followed by the attachment or exhibit Number, followed (where applicable)  by the ECF page number (ie.  ECF 24-5, pp. 34-45) and  ignoring any numbering system within the documents themselves.

[2]     Petitioner Sutherland was originally represented by the county public defender but later by Ronnie Molina who was retained by Sutherland's family member. For ease of reading I will refer to Sutherland's trial counsel using the name "Molina" and unless otherwise noted, references to "Molina" are references to his trial counsel.

2

choice but the clerk initially incorrectly claimed the motions were not filed.

(5) Sutherland did not voluntarily and intelligently enter his plea with the advice of competent counsel, and it was coerced by the circumstances that his attorney provided no advice, was unfamiliar with the facts, and was wholly unprepared for a trial.

Following the State's Response, Sutherland refined his claims by his Traverse (Reply) to clarify his claims, asserting:

1.   that by the unpreparedness of his attorney he was constructively denied counsel when he entered his pleas, clearly a critical stage of his criminal proceedings, thereby triggering the *Cronic*[3] presumption of prejudice and obviating any necessity for him to prove *Strickland's*[4] second-prong prejudice.

2.   that the state habeas court's express finding that due to his attorney's lack of preparation his pleas were not the product of an "informed" decision was not overcome by its later habeas finding of the "voluntariness" of his pleas; all thereby obviating any necessity to prove *Strickland* second-prong prejudice.

3.   that his attorney's incompetence directly resulted in the denial of his right to appeal his sentence that was in excess of the statutory maximum.

4.   that the state habeas court's findings were not supported by the evidence before it because there were no pictures or videos from which his attorney could identify him as being present at the scene of the burglaries.[5]

## Limitations and Exhaustion-Non-Issues

The State correctly concedes in respect to Sutherland's claims that they are not barred by limitations, successive petition, nor by failure to exhaust.[6]

## State Response on the Merits

The State's response to all of Sutherland's claims are that they have been litigated and determined adversely to him at the state level and that the state determinations are presumptively

---

[3]   *U.S. v. Cronic*, 466 U.S. 648 (1984).

[4]   *Strickland v. Washington*, 466 U.S. 668 (1984).

[5]   ECF 29.

[6]   Respondent's Response, ECF 27, p. 7.

correct and are actually correct.  The State correctly observes that the "underlying basis of Sutherland's claims is that he claims he entered his guilty pleas involuntarily and unknowingly due to ineffective assistance of counsel and additional violations of his constitutional rights."  First, the State argues that the state courts reasonably determined that Sutherland entered his guilty pleas voluntarily, knowingly and intelligently.  Second, the State posits that by his knowing and voluntary guilty pleas, he waived claims of the ineffectiveness of his counsel arising from his attorney's lack of investigation, lack of preparedness, failure to object to terms of the plea bargain, or conflicts of interest or by a constructive denial of counsel. Third, the State asserts that Sutherland's ineffective assistance of counsel (IAC) claims did not impact the voluntariness of his guilty pleas. Fourth, the State asserts that Sutherland was not denied counsel of his choice. Fifth, and finally, the State opines that Sutherland's claim based upon the use of sentencing enhancement is not cognizable in this court.

<u>State Court Proceedings</u>

As noted above, after his conviction, Sutherland filed state applications for writ of habeas corpus with the Texas Court of Criminal Appeals challenging the convictions in all of the cases and alleging six ground for relief.[7]  The Texas Court of Criminal Appeals remanded the cases and ordered the trial court to make express findings of fact and conclusions of law regarding the grounds of ineffective assistance of counsel,  counsel's potential conflicts of interest, and the denial of his right to counsel of his choice.[8]  Further,  the Court directed the trial court to determine whether counsel was deficient in not attempting to suppress a warrantless search where proper consent was at issue.  The trial court obtained affidavits from various participants before ordering a plenary

---

[7]     ECF 22-2, pp.6-131 and ECF 22-3, pp. 1-14.

[8]     ECF 21-6, pp. 2-4; ECF 24-4, pp. 2-4.

hearing at the State's request.[9] Over five (5) sessions during a period of eight (8) days the trial court considered additional evidence regarding Sutherland's trial counsel's performance before the court.[10] The court considered the arguments of the prosecutor and the public defender attorney who had been appointed to represent Sutherland throughout those sessions. The trial court entered findings of fact that included a finding that because trial counsel was deficient in his trial preparation and was not prepared to go trial Sutherland was without counsel, and, therefor, his plea was "not the product of an informed decision."[11] On that finding the trial court recommended relief by way of retrial.[12]

The Texas Court of Criminal Appeals, disagreeing with the recommendation for relief, again remanded the cases to the trial court requesting additional clarifying information regarding whether its recommendation for relief was "based on *United States v. Cronic*, 466 U.S. 648 (1984), or *Strickland v. Washington*, 466 U.S. 668 (1984)."[13] Again the trial court received affidavits on these issues and also addressing Sutherland's trial attorney's intervening drunk driving conviction, usage of cocaine and methamphetamine, and federal probation violation. Sutherland took the opportunity to submit his own affidavit insisting that, "I would have insisted on trial had I been represented by a competent attorney who was prepared to defend me."[14] The trial court announced his findings in open court following arguments of counsel.[15] With these submissions before it, the trial court entered written supplemental findings recommending that relief be denied upon its determination

---

[9]    See ECF 21-5.

[10]   ECF 20-5 through ECF 20-10.

[11]   ECF 21-13, pp. 64-71.

[12]   *Id*. p. 17.

[13]   ECF 21-8, pp. 2-4.

[14]   ECF 24-7, p. 29.

[15]   *Id*. p. 14-16.

that, among other issues, Sutherland intended his trial counsel to enter into a plea bargain process on his behalf notwithstanding the known shortcomings in his counsel's preparation for trial and voluntarily accepted the state's fifteen year plea bargain by voluntarily pleading guilty to twelve felony counts.[16] On September 18, 2013, adopting the trial court's supplemental findings, the Texas Court of Criminal Appeals denied the application without written opinion.[17] This proceeding followed

## AEDPA Review Standards

The AEDPA standards for review of state court criminal proceedings in this Court are accurately summarized by Judge Reed O'Connor in the case of *Lee V. Stephens*, 2015 U.S. Dist LEXIS 17867 (N.D. Tex. 2015), and need not be repeated here. As noted therein, where the state court's have made determinations of matters of fact, those determinations are presumed to be correct. Further, a federal court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. The petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770 (2011).

## Standards for Review of Guilty Pleas

A guilty plea is knowing, voluntary and intelligent if done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States*, 397

---

[16]     ECF 21-1, pp. 5-13.

[17]     *Id.* p. 2.

U.S. 473, 478, a challenge to a guilty plea as involuntary and intelligent will be upheld on federal habeas review. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1979).

### Dividing Line between *Cronic* and *Strickland*

This case squarely presents the issue of the dividing line between *Cronic* and *Strickland* and their respective progeny with respect to the necessity *vel non* of proving prejudice as a result of the ineffectiveness of counsel as a violation of the Sixth Amendment. In the context of ineffective assistance of counsel for a defendant in a criminal case, in *Strickland* the Supreme Court determined that a defendant must prove of prejudice as a "second prong" of a decision as to whether a Constitutional violation warrants relief. In the same context in *Cronic*, the Supreme Court determined that in certain limited circumstances where a defendant is "constructively" denied counsel prejudice is presumed and need not be proved.

### Constructive Denial of Counsel

In *Cronic*, the Supreme Court recognized that the Sixth Amendment right to counsel means more than the mere presence of an attorney at a critical stage of a criminal proceeding. Since a proceeding for the entry of a guilty plea (an arraignment) is a critical stage in a criminal case, counsel for a defendant must be present.[18] But mere presence alone is does not meet Constitutional muster.[19] In *Cronic's* progeny, the courts have identified many responsibilities that counsel for a

---

[18] The Supreme Court has held that a plea hearing is a critical stage of the prosecution, at which the right to counsel is constitutionally guaranteed. See *Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S. Ct. 157, 158-59 (1961); *White v. Maryland*, 373 U.S. 59, 60, 83 S. Ct. 1050, 1051 (1963).

[19] See *United States v. Taylor*, 933 F.2d 307 (5th Cir.), cert. denied, 502 U.S. 883, 112 S. Ct. 235 (1991) in which the court found a Sixth Amendment constructive deprivation despite the presence in court of "standby counsel" at sentencing, during which "stand by counsel" did nothing, saying "standby counsel is, in constitutional terms, no counsel at all.").

defendant must exercise or perform incident to providing adequate representation at a plea hearing. But "[a] constructive denial of counsel occurs . . . in only a very narrow spectrum of cases"). *Woodward v. Collins*, 898 F.2d 1027, 1029 (5th Cir. 1990); *Cracker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986)*; Martin v. McCotter*, 796 F.2d 813, 820 (5th Cir.1986).

In the case *sub justice*, the Texas Court of Criminal Appeals so recognized the issue in its second order of remand to the trial court. Faced with the trial court's determination that Molina was clearly and admittedly unprepared for a trial, the Court of Appeals remanded to the trial court to make the express determination of whether Sutherland had been constructively denied counsel under *Cronic* or prejudiced thereby under *Strickland*. Upon its review of the affidavits and the record following the first remand and new affidavits, the trial court made an express determination that Sutherland had not been constructively denied counsel but had voluntarily pleaded guilty despite counsel's unpreparedness.[20]  In subsequently adopting the findings of the trail court incident to denying the writ,  the Court of Criminal Appeals adopted this determination and denied relief.

<u>Constructive Denial of Counsel Standards</u>

In *Cronic*, the Court recognized that "[t]here are. . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." The Court recognized that in the circumstance of a plenary trail where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, "[n]o specific showing of prejudice " would be required.  However, the Court further recognized that apart from circumstances of that magnitude there is generally no basis for finding a *Sixth Amendment* violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt. *Cronic* involved a

---

[20]     ECF 21-1, p.7 ("Based on the remand order, whether the Applicant was constructively denied counsel hinges on whether the Applicant would have pleaded not guilty and insisted on  a  trial but for counsel's failure  to prepare for trial.  That  being the issue, the trial court disagrees with the State and finds that the Applicant was not constructively denied counsel.")

determination of the sufficiency of the performance of counsel in a trial. Subsequent cases have addressed the character of counsel's performance in the context of a guilty plea where as here there is no plenary trial.

In *Hill v. Lockhart*,[21] the Court held that in the guilty plea context the two-part *Strickland v. Washington* test applies to challenges based on ineffective assistance of counsel defined "prejudice" in the guilty plea context:

> "The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. 106 S. Ct. at 370.

The plea colloque as a whole fully supports the habeas court's factual determinations that (1) Sutherland's pleas were "voluntary" and (2) it was "inconceivable" that Sutherland would have insisted upon a trial. I find that these factual findings are entitled to a presumption of correctness, are correct, and no reasonable, fairminded jurist would find otherwise. But this brings us to focus on Molina's status and performance as Sutherland's counsel with regard to the plea proceedings.

Regarding the substance of Molina's representation related to Sutherland's guilty pleas, Sutherland arduously asserts that Molina was no more than a "whacked out"-"potted plant" equivalent to "no lawyer at all."[22] The thrust of Sutherland's Traverse complaints regarding Molina's representation is his lack of preparation for a trial, the issue the habeas trial court addressed in finding that Molina was unprepared for a trial. Yet, significantly, Sutherland does not identify or articulate any "specific advise" that Molina gave him, or did not give him, or of which he was not

---

[21]   474 U.S. 52, 106 S.Ct. 366 (1985)

[22]   ECF 29.

aware, in making his choice to enter his guilty pleas, other than an issue regarding the applicable sentencing range. This issue will be addressed further below.

As early as 1991 in *United States v. Taylor*, 933 F.2d 307, 313 (1991), the Fifth Circuit determined that "... as useful as *standby counsel* may be when a defendant wishes to represent himself, this Court holds that *standby counsel* is not 'counsel' at all within the meaning of the Sixth Amendment"[23] and obviating any necessity for proof of prejudice. In *Childress v. Johnson*, 103 F.3d 1221, the Fifth Circuit's opinion explored at length the dividing line *Cronic* "standby counsel" cases where prejudice was presumed versus *Strickland* "bad lawyering" cases which mandated proof of prejudice. Finding that standby counsel was no counsel at all, the Court stated, "When defense counsel is appointed solely to execute the defendant's waiver of jury trial, and when the evidence establishes that counsel performed no other service for the defendant, it cannot be said that the defendant received the assistance of counsel for his defense."

Even in the context of a guilty plea, citing *Taylor* the Court stated, "There is a great difference between having a bad lawyer and having no lawyer: if the lawyering is merely ineffective, then the decision to grant relief turns on the degree of incompetence and prejudice to the defendant; if the defendant had no lawyer, prejudice is legally presumed in every case and the defendant is entitled to relief in every case."

Admittedly, Sutherland's trial counsel's role in the plea process was limited. But it was limited by Sutherland's own actions and choices. Although Sutherland himself took on a lead role in negotiating his own plea agreement, Molina did participate in the plea process even to the extent of advancing Sutherland's argument regarding the applicable sentencing range. After the discussion

---

[23]     See also, *United States v. Robes*, 2012 U.S. App. LEXIS 4982 (5th Cir. 2012) citing *Taylor*; *United States v. Virgil*, 444 F.3d 447, 453 (5th Cir. 2006); *United States v. Davis*, 269 F.3d 512, 520 (5th Cir. 2001).

of the proper sentencing range, Molina and Sutherland retired to execute the paperwork and had

plenty opportunity to discuss the plea acceptance decision by Sutherland. In the habeas corpus

proceedings, the Court quizzed attorney Molina about the events of the plea negotiations:

> Q.  Yesterday, Mr. Molina, you detailed going into the jury room and said - - in the 78th
> district courtroom and talking and advising your client the day the trial was going to start,
> correct? A. [Molina] Yes. Q . And at that time, the two of y'all , and only the two of y'all,
> were in that room, correct? A . [Molina]Yes. Q. He told you at that time that he wanted to
> plead, correct? He wanted you to get him a deal? A. [Molina]] That specific comment, he
> was sitting there, if it's the comment that you're making that I made.  Q . Did he ever tell
> you in the jury room that he wanted to make a deal ? A . [Molina] Yes. Q.  He reiterated,
> himself, when he came into open court and said in the jury box and said loudly enough for
> Judge Fudge to hear, said he wanted you to make a plea bargain for him, get him a deal? A.
> [Molina]Yes. Q . And you, in fact, accomplished that for him, correct? A. [Molina] Yes. Q.
> Culminating in the plea of guilty to ten counts of burglary, correct?[24]

During one of the later evidentiary hearings on the performance of counsel,  Molina,

explained how his continued involvement in the plea process had been demanded by Sutherland:

> Q.[The Court]  Now, on the day that the trial was to commence, June 7th, you testified the
> defendant told you - - the defendant being in the best position to understand what he had
> done, the defendant told you emphatically there will be no trial, correct?
> A.[Molina] I think he told the judge, but it was coming towards me, like, get my ass out
> there and get him a plea.
> Q .[The Court] Did he make that statement in open court?
> A. [Molina]Yes.[25]

Prior to the trial date, Sutherland had been given the opportunity to discharge Molina as his

counsel, but declined that opportunity. Sutherland even insisted that Molina pursue a plea bargain

on his behalf.  And then prior to commencing the trial, at the plea hearing he affirmed that Molina

had assisted him in obtaining a plea bargain with the prosecution.  Then, at the point of the court's

acceptance of his pleas, the court engaged in the following colloque:

> THE COURT: And so the Court will find that you're competent and will go ahead

---

[24]      ECF 25-5, pp.38-39.

[25]      ECF 25-4, pp. 90-91

and proceed with the rest of the hearing this morning.  There's  been several issues regarding your satisfaction or not with your representation; is that correct? THE DEFENDANT:  Yes, your Honor.  THE COURT: And we had discussed that as recently as May 25th.  Do you recall that? THE DEFENDANT: Yes, your Honor. THE COURT: And at the culmination of our conversations on May 25th, you had determined at that date  that you were satisfied with Mr. Molina as your attorney; is that correct? THE DEFENDANT: Yes, your Honor. THE COURT: All right. Now, since that time there's been some other issues come up in your mind with regard to whether or not you wanted him to represent you. But those have been worked out as of  today for the purposes of this hearing; is that correct?  THE DEFENDANT: Yes, your Honor.  THE COURT: And for the purposes of this hearing, have you been satisfied with Mr. Molina' s  representation of you? THE DEFENDANT: Yes, your Honor. [26]

In Sutherland's state habeas proceedings the trial court considered the circumstances attendant to the plea process, including Molina's lack of trial preparation, but did not find that those circumstances warranted a *Cronic* presumption of prejudice. Sutherland's counsel was not just "stand by" counsel.  He actively participated in the plea process on Sutherland's behalf, though in a role limited by Sutherland's own conduct.

The trial court's conclusion that Sutherland was not constructively denied counsel is supported by the court's own factual findings which were likewise supported by the evidence before that court.  This conclusion by the state court in the habeas proceeding is presumed to be correct. Sutherland has wholly failed to show clear and convincing evidence otherwise. No reasonable or fairminded jurist would find or conclude otherwise.

However, this does not end the inquiry as the issue remains whether the record supports the trial court's implied finding that Sutherland did not establish prejudice from his counsel's lack of trial preparation or from his conduct or lack thereof at or incident to Sutherland's guilty pleas. See *Woodward v. Collins, supra* at p. 1029.

---

[26]        ECF 19-1, pp. 14-15.

Strickland Prejudice Prong

To establish prejudice resulting from Molina's lack of preparation, Sutherland globally claims that Molina's unpreparedness placed him on the horns of a dilemma between going to trial with an unprepared attorney or accepting a illegal plea bargain.  He asserts that prejudice occurred because Molina did not try to put forth a defense.  He claims Molina did not advance his argument that evidence of his possession of stolen property should have been suppressed due to a warrantless, unconsented search of his residence.  Further, he claims that contrary to Molina's habeas hearing testimony there were, in fact, no surveillence videos or pictures of him to identify him as the perpetrator of the burglaries. He posits that the pictures were of someone else, possibly his son. Since Molina did not advance either defense, Sutherland claims prejudice by his counsel's unpreparedness. Finally, he raises an issue of Molina's failure to preserve his right of appeal to challenge his sentence as being beyond the statutory maximum.  But tellingly, nowhere in the record of the state court proceedings does Sutherland claim that he was innocent of the charged offenses.

Suppression Issue

In the state court record of the habeas corpus hearings there is a copy of a written consent to search executed by one "Cody Epperson" who was later identified as Sutherland's wife authorizing the search of the residence at 1510 25th Street, Wichita Falls, Texas.[27]  It was attached to and identified in the Affidavit of Patricia Duncan, a Wichita Falls police officer, who avowed that "Ms. Epperson was informed of the reason for the police contact and she voluntarily consented to the search of her residence" into which "the defendant had moved in with her the previous year."[28] Finding that this affidavit testimony and exhibit and Officer Duncan's and Officer Culler's

---

[27]     ECF 23-11, p. 51. (Also at ECF 20-10, p. 104.)

[28]     *Id.* pp. 49-50.

testimonies[29] were credible and that the opposing affidavit of Ms. Epperson was not credible, the trial court found that a challenge to the admissibility of the evidence of Sutherland's possession of stolen property would have been unavailing as it was meritless.[30] This finding is supported by the evidence before the trial court, is presumptively correct, and no fairminded or reasonable jurist would find or conclude otherwise.

Picture Identification Issue

At the habeas hearing, Molina testified that he had viewed certain surveillance pictures taken at the scene of a robbery and he concluded that Sutherland's own face was shown in the pictures.[31] At the habeas plenary hearing on April 25, 2013, there was an extensive factual dispute between Molina and Sutherland's habeas counsel over whether Molina had ever shown the pictures to Sutherland himself. Notwithstanding that factual dispute, the court expressly found that Sutherland had been identified in a crime scene image by both trial counsel and a law enforcement investigator. The trial court reached that conclusion based upon a law enforcement officer's identification testimony[32] and Molina's own viewing of the pictures,[33]and concluded that it would have been unavailing for Molina to have presented as a defense that the pictures were that of Sutherland's son and not Sutherland himself.[34] This conclusion is supported by the evidence before the trial court, is presumed to be correct and no fairminded or reasonable jurist would find or conclude otherwise.

---

[29]    Duncan's testimony at ECF 20-7, pp. 75-79; Culler's testimony on pictures/video at ECF 20-7, pp. 43-75.

[30]    ECF 21-13, pp. 68-69.

[31]    ECF 20-5, pp. 30-35.

[32]    ECF 20-7, pp. 56-59, 63-65, 73-74.

[33]    ECF 20-5, pp. 32 and 85-86.

[34]    ECF 21-1, p. 8-9.

14

<u>Guilty Pleas Analysis</u>

As reflected above, the state trial court determined on the merits, after plenary hearings, that despite Sutherland's counsel's lack of competence and lack of preparedness for trial Sutherland's guilty pleas were "voluntarily made."  On the second remand from the Court of Criminal Appeals, the trial court made the following express finding as to the voluntariness of Sutherland's guilty pleas:

> ""No credible evidence has been presented to the trial court to show that Applicant would have done anything other than plead guilty and accepted the plea offer had trial counsel been prepared. ...[35] The notion that the Applicant would have insisted on a trial in the face of photographic evidence placing him at a crime scene coupled with the fact he had no basis to suppress the evidence found on property under his control, is not credible."[36]

That determination of voluntariness of Sutherland's pleas was relied upon by the Court of Criminal Appeals in denying habeas relief.  But the cases make it clear that a defendant's understanding of the legal and factual consequences of his plea is as critical to its efficacy as the defendant's willingness to enter it. Otherwise considered, willingness is only one component of voluntariness. The other is a knowing or intelligent choice.  In *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 369 (1985), the Supreme Court observed:

> "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); see *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Machibroda v. United States*, 368 U.S. 487, 493 (1962).
>
> .   .   .
>
> Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). As we explained in *Tollett v. Henderson*, 411 U.S. 258 (1973), a defendant who pleads

---

[35]     *Id.*

[36]     *Id.*

guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." Id., at 267."

As to the voluntariness of his pleas, Sutherland acknowledged twelve times in the Admonishment and Waiver and Stipulation of Evidence forms in his guilty plea papers that he did so voluntarily and not as a result of being misled or harmed by any admonishment of the court.[37] Twelve times he confessed to the commission of the indicted offense, freely and voluntarily understanding the legal effects and consequences of such confessions.[38]   And finally before accepting his pleas and plea paperwork, the Court inquired, as follows:

> THE COURT: And with - - before accepting your guilty plea I want to discuss with you again some of the documents you've signed.  One of them was a Consent to Stipulation of Evidence where you've agreed that the State's evidence is - -  is what it is. And the Court' s going to rely on that stipulation that's been signed by you in reaching whatever decision it reaches today.  You understand that?
> THE DEFENDANT:  Yes, your Honor.
> THE COURT: And that consent is one of the documents that you signed and initialed freely, willingly, knowingly and voluntarily; is that correct?
> THE DEFENDANT: Yes, your Honor.[39]

Based upon the foregoing and my examination of the entire record, I find that the trial court's determinations that Sutherland's guilty pleas were willingly made is fairly supported by the evidence.  No fairminded or reasonable jurist could disagree on the correctness of the state court's decision as to the willingness of Sutherland's pleas of guilty.  I find that the trial court's determination that Sutherland would not have insisted upon a trial even if his attorney had been adequately prepared for trial is supported by the evidence. I further find that the trial court's finding that Sutherland willingly proceeded to entry of his pleas with the counsel of his choice

---

[37]     ECF 24-5, pp. 6-26, 81-86, 96--98.

[38]     ECF 24-5, pp. 30-69, 87-90, 99-102.

[39]     ECF 18-2, p. 16.

notwithstanding his counsel's admitted lack of preparedness for a trial is fairly supported by the evidence before that court and is not only presumptively correct but is correct. *Mitschke v. State*, 129 S.W.3d 130, 136 (Tex. Crim. App. 2004) (providing "defendant who pleads guilty after having been properly admonished of his constitutional rights, who has knowingly and voluntarily waived those rights, and who has been admonished as required by our constitutions and art. 26.13 of the Texas Code of Criminal Procedure is presumed to have entered a voluntary and knowing plea"). Therefore, the record supports an implied finding by the trial court and the Court of Criminal Appeals in their "voluntariness" determination that Sutherland's pleas were also knowingly and intelligently made. I find that Sutherland has wholly failed to show by clear or convincing evidence that it was reasonably probable that but for his attorney's lack of preparedness he would have insisted upon a trial. On the basis of this record, no fairminded or reasonable jurist would find otherwise.

<u>Denial of Right of Appeal</u>

Sutherland claims that because of Molina's unpreparedness he was prejudiced because he was denied the right of direct appeal to challenge the application of §12.42 of the Texas Penal Code used by the state to enhance Sutherland's potential sentencing range on a state jail felony from two to ten years to two to twenty years. If the lesser range of permissible punishment was applicable at the time of sentencing, his fifteen year sentence would be beyond the statutory maximum. It would be void[40] and subject to challenge on direct appeal or any other post conviction

---

[40]     ("A 'void' or 'illegal' sentence is one that is not authorized by law") *Ex parte Seidel*, 39 S.W.3d 221, 225 n.4 (Tex. Crim. App. 2001); *Ex parte McIver*, 586 S.W.2d 851, 854 (Tex. Crim. App. 1979); ("A sentence outside the prescribed punishment range is void and illegal.") *Baker v. State*, 278 S.W.3d 923, 926 (Tex. App.--Houston [14th Dist.] 2009, pet. ref'd).

proceeding.[41]

Ordinarily under Article 44.02 of the Texas Code of Criminal Procedure, a convicted felon has the right to a direct appeal to the Court of Appeals.  However, where the conviction is based upon a guilty plea, direct appeal is limited under Article 44.02 and Rule 25.2 of the Texas Rules of Appellate Procedure to two circumstances: "A defendant may appeal, (A) those matters that were raised by written motion filed and ruled on before trial, or (B) after getting the trial court's permission to appeal." The same is true with respect to a ruling on a *pro se* motion made by the defendant who has counsel. *Robinson v. State*, 240 S.W.3d 919, 920 (Tex. Crim. App. 2007). The record reflects that no permission to appeal was granted to Sutherland by the trial court. Accordingly, Sutherland necessarily relies upon subsection (A) of Rule 44.02 as support for this claim.

Sutherland claims that he prepared and presented a motion, written by his own hand and delivered to the trial court in advance of his pleas and sentencing, challenging the use of Article 12.42 to enhance the sentencing range from two to ten years to two to twenty years.  Although Sutherland later filed his own *pro se* notice of appeal[42] and submitted a hand written document denominated "memorandum" to the Court of Appeals, it ultimately dismissed his appeal relying upon the trial court clerk's notation that no such motion had been filed.[43]  In the later conducted

---

[41]  *Ex parte Beck*, 922 S.W.2d 181 (Tex.Crim.App. 1996) ( 'We have long held that a defect which renders a sentence void may be raised at any time." *Heath v. State*, 817 S.W.2d 335, 336 (Tex.Crim.App. 1991)(Habeas corpus relief will issue to a person in custody under a sentence which is void because the punishment is unauthorized), *Ex parte Harris*, 495 S.W.2d 231, 232 (Tex.Crim.App. 1973) and *Ex parte White*, 659 S.W.2d 434, 435 (Tex.Crim.App. 1983)."

[42]  ECF 19-3, p. 59.

[43]  ECF 18-1, pp. 17-19.

habeas corpus proceedings, a copy of such "memorandum" was produced as an attachment to the affidavit of Sutherland's trial counsel.[44]  By that memorandum, Sutherland clearly challenges the application of §12.42 to increase the permissible range of punishment available to the court, prosecutor or the defendant for plea bargain or trial purposes.  An examination of the colloque between the trial judge, Sutherland, Sutherland's counsel and the prosecutor at the plea hearing reflects that the subject matter of this motion was discussed at length.

On July 7, 2010 at the commencement of the scheduled trial, a pretrial hearing was conducted.[45]  Following the brief opening by the Court and a brief discussion of the receipt of a letter report concerning Sutherland's competence to stand trial, the Court expressly recognized that Sutherland had some motions to be considered, one being a "sentencing memorandum," saying:

> THE COURT: But if we're going to consider whatever motions the defendant has, I guess we'll do that at this time.
> MR. MOLINA:  - - right.
> MR. KOSUB:  And just for clarity, Judge, I don't think any of these - - we'll listen to them.  But we haven't been served with any motions, I don't think.
> THE DEFENDANT:  I have a copy here to serve on you, if I may.
> THE COURT:  What are the subject matters of the motions?
> THE DEFENDANT:  Well, one of them is the conflict of interest that's between Mr. Molina and I. And the other one is a *sentencing memorandum*.
> THE COURT: Okay. On the conflict of interest, Mr. Sutherland, this is - - we've been through that once.
> THE DEFENDANT:  Yes, sir.
>       (Emphasis supplied)

Whereupon, the Court and Sutherland engage in a discussion of Molina's potential conflict of interest arising out of his representation of another defendant in a companion case. Rather than considering a disqualification of Molina, Sutherland's then counsel, the Court turned to the status of Sutherland's desire to accept or reject a proposed plea bargain.  To this the following colloque

---

[44]     ECF 23-10, pp. 33-36 and ECF 24-16, pp. 33-36.

[45]     ECF 19-1, pp. 4-21.

ensued regarding the sentencing memorandum:

> THE DEFENDANT: Well, can I file the sentencing memorandum?
> MR. MOLINA:  Your Honor, may I give clarification ? Mr. Sutherland -- I believe Mr. Sutherland believes the sentencing guidelines should be two to ten versus two to twenty.  That's, I believe, what his memorandum is.
> THE COURT: So it's a  brief on what you  consider to be the appropriate sentence guidelines?
> THE DEFENDANT: Yes. Yes, sir.
> THE COURT: Sure. You can  file that.
> THE DEFENDANT: There's a copy for the prosecution and a copy for the Court.
> THE COURT:  Give that one to Dobie, Deputy Mills, if you would .
> MR. KOSUB:   But we' re going to have to - -
> THE COURT:  Thank you, sir.  And the Court wants to be clear on the record that - - that this is not the first time that Mr. Sutherland has raised issues and concerns about representation. We've had  hearings with regard to that.  And Mr.Sutherland has previously agreed that his representation was adequate and he wanted to continue with Mr. Molina as his counsel.

Whereupon, the Court ruled that since there was a plea bargain under consideration, "I think any complaints regarding Mr. Molina's services are moot, and the Court would not entertain prior - - or additional information at this time with regard to any complaints of his representation. So do we have a plea bargain?"

> THE DEFENDANT: Well, in consideration of the motion - - I mean, if you'll consider that, then, yes, we do.
> THE COURT: Well, normally, a plea bargain - -maybe I need to have a little more information about what the plea bargain is proposed to be. Because normally, it would include, you know, the sentence.
> MR. KOSUB:  Judge, it's my understanding Mr. Sutherland is currently under indictment for ten different counts of burglary of a building. Those are by themselves State Jail felonies.
> His record is such that - - and I don't have it in front of me and I'm not sure - - but it's been shown to me that he has two prior consecutive non-State Jail felonies.  That were not State Jail felonies at the time that they were adjudicated.
> I believe burglary of a building - - I think he has a conviction for burglary of a building. Prior to 1994, I think, at that time was a third degree felony and is considered as such under the code. And I think that is what his memorandum motion speaks. It's our position that those two felonies that he has previous to these ten, are consecutive.  Therefore, these State Jail felonies are enhancible under - -

At the instance of the Court, the prosecutor then outlines the terms of the plea bargain that

20

includes all thirteen counts of burglary of a building (other than a habitation) and an unindicted

retaliation charge in exchange for a 15 year sentence. Then the Court calls upon Mr. Molina to reply:

> THE COURT : Yeah.  Mr. Molina, can you help me?
> MR. MOLINA: With a plea bargain, your Honor, the sentencing guidelines - - well, I don't have any response other than what Mr. Kosub just said.
> It is precisely that. Mr. Sutherland believes that it - - the burglary of a building was grandfathered in as a State Jail felony and should not be considered as two felonies. So therefore, his sentencing guidelines should be from two to 20. Not two to ten. So maybe the appropriate question should be would there be an acceptance of the plea bargain, 15 years, with the understanding two to 20 as the sentencing guideline that would go on the plea bargain paperwork.
> THE DEFENDANT: Two to ten was what my argument was.
> MR. MOLINA: Correct.
> THE COURT:  How can we plea bargain a 15-year sentence on a two to ten-year punishment?
> MR. KOSUB:  We can't. Because that would not be the appropriate range of punishment, Judge. The appropriate range of punishment in this case, assuming that we could prove - -  and  we  can - - the prior - -
> THE DEFENDANT:  Yes.  I agree- that you can. Yeah, I can see the fact that -- that I do have the two convictions that you speak of.  I do concede that fact.  Yes.
> THE COURT:  And if you want to do this plea bargain, I think you are arguing against yourself. Because you're going to place the State in a position where they can not accept the plea bargain, and it would force a trial. So if you are willing to accept the 15 years, the range of punishment has got to be two to 20.
> THE DEFENDANT: And if it's not?
> THE COURT:  Then we're going to trial.
> MR. MOLINA:  And then it would be on record, your Honor, that - -
> THE DEFENDANT: That I object to it?  I mean, can I object to it and still take the plea agreement?
> THE COURT : Well, we'll let - - your attorney can.
> THE DEFENDANT:  Okay.
> MR. MOLINA: I'll make the argument, your Honor.

It is clear from this colloque that Sutherland presented to the Court a writing, written in his

own hand,  that included his argument that due to the express phrasing of Article 12.42 the state was

limited to a maximum sentencing range of two to ten years and that a sentence of fifteen (15) years

would exceed the maximum sentence permitted under the law. Though denominated a

"memorandum," Sutherland's hand written document qualified as a motion since it raised a question

of law and sought certain relief. Clearly, the argument set out in the memorandum was presented

to the Court, tendered to the Court and prosecutor, argued by the parties, considered by the Court, and, by implication, ruled upon by the Court adversely to Sutherland's position.  Sutherland claims that he and his attorney considered that the issue had been preserved for presentation upon an appeal notwithstanding the entry of the requisite guilty pleas in acceptance of the plea bargain that followed.

In response, the state argues that Sutherland abandoned his argument by conceding  the fact that he had the two convictions referenced by the prosecutor in his argument.  Before accepting the plea bargain, the trial judge directly addressed Sutherland's issue and whether it was to be preserved for appeal or waived. The colloque was as follows:

> THE COURT: Okay. Well, based upon the - - well, first of all, with respect to the sentence, there's been some conversation prior to when we went on the record that you had a legal position that the sentencing authority for these violations was two to ten as opposed to two to twenty; is that correct?
> THE DEFENDANT:  Yes, your Honor.
> THE COURT: And you've actually filed a pleading with the Court in raising that issue; is that  correct?
> THE DEFENDANT:  Yes, your Honor.
> THE COURT: And you understand that the Court is not willing to accept the plea bargain that's just  been announced on the record unless with respect to your waiver of right of appeal, you're also  waiving your right to appeal any question concerning the  validity  of  this  15-year  sentence  that's  part  of  the  plea  bargain.   Do  you understand that?
> THE DEFENDANT:  Yes, your Honor.
> THE COURT:  So that the documents that you filed with the Court and among the pleadings  of  this  case  any  question  it  might  otherwise  raise,   you're  going  to  -- you're waiving your right to appeal from any such question?
> THE DEFENDANT:  Yes, your Honor.

It is clear from this last quoted portion of the plea colloque that in order to assure a limitation of his period of incarceration to no more than fifteen years, Sutherland was willing to and did voluntarily waive his right of appeal with respect to the issue of the application of Article 12.42 to

enhance the permissible sentencing range to the two to twenty year range. In dismissing Sutherland's *pro se* appeal, although the Court of Appeals relied upon the original certification of the clerk of the trial court that no motion had been filed (Sutherland's apparent procedural default), Sutherland's right of appeal on this issue had already been waived by him clearly and  affirmatively. Decisions of the state courts though correct for the wrong reasons are still binding on this Court. The last quoted portion of the plea colloque fully supports the Court of Appeals finding that Sutherland had waived his right of direct appeal of that issue. I find that Sutherland's own procedural default arising from his own voluntary waiver was the cause of his inability to present this issue to the state courts by direct appeal. However, on habeas corpus review in this court Sutherland's argument warrants closer examination.

<u>Illegality of Sentence</u>

A sentence outside the prescribed punishment range is void and illegal. *Baker v. State*, 278 S.W.3d 923, 926 (Tex. App.--Houston [14th Dist.] 2009, pet. ref'd).  An illegal sentence is one that is not authorized by law; therefore, a sentence that is outside the range of punishment authorized by law is considered illegal. *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003); *Ex parte Beck*, 922 S.W.2d 181, 182 (Tex. Crim. App. 1996). When reversible error occurs in the punishment phase of trial, the appellant is entitled to a new punishment trial. Tex. Code Crim. Proc. art. 44.29(b); see also *Baker*, 278 S.W.3d at 927. Under Texas case law a claim of an illegal sentence is cognizable in a writ of habeas corpus. *Ex parte Parrott*, 396 S.W.3d 531 (Tex. Crim. App. 2012); *Ex parte Rich*, 194 S.W.3d 508, 511 (Tex. Crim. App. 2006).

Prior to finally accepting the state's plea bargain for a fixed term of fifteen (15) years, Sutherland attempted to challenge the trial court's pronouncement of a sentencing range of "two to

twenty years" proscribed for a *second degree* felony arguing that the proper range is a term of "two

to ten years" proscribed for a *third degree* felony. He seemed to assert that since the primary charge

for the offense to which he proposed to plead guilty is a state jail it can only be enhanced to a

sentencing range of "two to ten years" proscribed for a third degree felony, not to the range for a

second degree felony.[46]

In Texas at the time of Sutherland's pleas the range of punishment for the conviction of a

felony of the *third degree* was a term from two (2) to ten (10) years. Texas Penal Code §12.34. The

range of punishment for a conviction of a felony of the *second degree* was two (2) to twenty (20)

years. Texas Penal Code §12.33. In the three indictments, Sutherland was charged with the

commission of offenses of "burglary of a building" (not a habitation) under Texas Penal Code

§30.02(a) for which in 2010 subsection (c)(1) defined the offense as a "state jail felony." Under

Texas Penal Code §12.35(a) the punishment range proscribed for a state jail felony is "not more than

two years or less than 180 days."

At the time of his guilty pleas, Texas statutory law allowed for enhancement of the

punishment for a primary offenses for repeat or habitual offenders. Texas Penal Code §12.42 as of

2005 read in pertinent part as follows:

§ 12.42.  Penalties for Repeat and Habitual Felony Offenders (2005)

(a)(1) If it is shown on the trial of a *state jail felony* punishable under Section
12.35(a) that the defendant has previously been finally convicted of two *state jail
felonies*, on conviction the defendant shall be punished for a *third-degree felony*.
(2) If it is shown on the trial of a *state jail felony* punishable under Section 12.35(a)
that the defendant has previously been finally convicted of *two felonies*, and the
second previous *felony* conviction is  for an offense that occurred subsequent to the
first previous conviction having become final, on conviction the defendant shall be
punished for a *second-degree felony*.
(3) If it is shown on the trial of a state jail felony punishable under Section

---

[46]     See the portion of the plea colloque at pages 18-20, *supra*.

12.35(c) or on the trial of a third-degree felony that the defendant has been once before convicted of a felony, on conviction he shall be punished for a second-degree felony.  (Italic emphasis supplied).

In 2001 the Texas Court of Criminal Appeals held (notwithstanding a vigorous dissent) that the term "felony" as used in subdivision (2) of § 12.42 (a) <u>did not</u> include "a state jail felony" for the purposes of enhancing the punishment range for a state jail felony prosecution. And in *dicta*, that court opined that "The statute as written also does not impose an increased punishment for offenders who have two previous convictions in the form of both a single prior state jail felony and a single prior non-state jail felony. If such lack of enhancement in either case is in fact an oversight in the statute, it is the business of the legislature, rather than this court, to correct it." *Id*. at pp. 3-4.

Prior to entering his pleas, Sutherland took issue with the prosecution's attempt to use the provisions of §12.42(a) to increase the sentencing range because both subsections (1) and (2) begin by the use the terms "on the *trial* of a state jail felony." He seemed to be trying to find or make a distinction between a finding of guilt resulting from a plenary trial before court and/or jury as distinguished from a finding of guilt as a result of plea proceeding. Making this distinction, he focuses upon the term "trial" in the enhancement provisions of §12.42 (a) to assert that the state was limited to applying only a subdivision (a) enhancement to a third degree felony authorizing a punishment range of only two to ten years.[47] This argument is unavailing. The is no legal distinction between a finding of guilt as the result of a plenary trial before court or jury and the finding of guilt as a result of a plea of guilty. There is no legal distinction between a finding of the fact of a prior conviction as the result of a plenary trial before judge or jury, and the finding of the fact of a prior conviction as the result of plea of guilty to the offense and true to the enhancement allegations.

---

[47]     Sutherland Trial Memorandum, ECF 24-16, pp. 33-36.

Sutherland was charged in three indictments[48] returned on 11-12-09, 12-8-09 and 4-1-10 respectively.[49] Each indictment charged a primary count of burglary of a building. Indictment One and Indictment Two did not originally contain any enhancement counts, but Indictment Three did. Indictment Three charged the primary charge of burglary of a building, together with two enhancement paragraphs alleging two felonies that were committed sequentially; the first being the felony offense of arson being a second degree felony (not a state jail felony) committed in 2005, after the second alleged felony offense of burglary for which he had been finally convicted in 1993. The indictment expressly alleged that the 1993 conviction in the burglary offense had become final before the commission of either the arson offense or the primary offense.  Furthermore,  prior to the plea hearing the state twice filed a Notice of Enhancement Paragraph(s) advising Sutherland of the state's intent to introduce evidence of his commission of the two prior felony offenses for enhancement purposes.[50]  Each of the notices listed the same two prior felonies as were included in the indictment in Cause No. 49522.

Under Texas law, the enhancement counts no longer were required to be in the indictment itself. *Brooks v. State*, 957 S.W.2d 30 (Tex. Crim. App. 1997).  Due notice to the defendant in advance of trial or plea was sufficient to allow the trial court to apply the appropriate enhancement

---

[48]    For ease of reading the indictments shall be referred to herein as follows: Indictment of 11-12-09 as Indictment One; Indictment of 12-8-09 as Indictment Two; Indictment of 4-1-10 as Indictment Three.

[49]    ECF 22-4, pp. 83-88 (originally assigned cause numbers 01-109708 through 01-109829 and subsequently assigned Cause No. 49009 by the trial court); ECF 23-12, pp. 144-147(originally assigned cause number 01-110054 and subsequently Cause No. 49,137 by the trial court; and ECF 25-2, pp. 144-147 (originally assigned cause number 01-109808 and subsequently Cause No. 49522 by the trial court).

[50]    ECF 19-2, pp. 34-35 (notice of February 25, 2010) and ECF 19-2, pp. 64-65 (notice of May 24, 2010.)

to the proscribed sentencing range on each count. *Brooks, supra.; Reyes v. State,* 314 S.W.3d 74, 80 (Tex. App. San Antonio 2010)*; Wilson v. State*, 267 S.W.3d 215 (Tex. App. Waco 2008), petition for discretionary review refused, (Feb. 13, 2009); *Williams v. State*, 356 S.W.3d 508 (Tex. App. Texarkana 2011), reh'g overruled, (Dec. 29, 2011). Nor is inclusion in the indictment necessary to meet Constitutional muster. *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). I find that the Notices of Enhancement Paragraph(s) filed in these cases gave Sutherland adequate notice of the two prior convictions alleged to authorize the enhancement sought by the state.

As a matter of Texas state law, it is well settled that the classification of an offense for sentencing purposes is governed by the law in existence at the time the offense was committed. *Patton v. Campbell*, 2003 U.S. Dist. LEXIS 6119 (N.D. Tex. 2003) (Citing *Fiori v. State*, 918 S.W.2d 532, 533 (Tex.App.--Dallas 1995, no pet.); *Wilson v. State*, 899 S.W.2d 36, 38 (Tex.App.-Amarillo 1995, pet. ref'd); *Delgado v. State*, 908 S.W.2d 317, 318-19 (Tex.App.--El Paso 1995, pet. ref'd); *Perry v. State,* 902 S.W.2d 162, 163 (Tex.App.--Houston [1st Dist.] 1995, pet. ref'd); *Castaneda v. State*, 911 S.W.2d 773, 775 (Tex.App.--San Antonio 1995, no pet.). From a reading of § 30.02 Vernon's Texas Statutes and Codes Annotated Penal Code, Title 7. Offenses Against Property, Chapter 30. Burglary and Criminal Trespass (West 1993)[51], I conclude that in 1993, when the second alleged enhancement offense was committed, the offense of burglary, as then defined by §30.02, was characterized as a *second degree felony, not a state jail felony*. Accordingly, I find that Indictment One together with the two notices gave Sutherland adequate notice of the state's intention to seek an enhanced sentence under subdivision (2) of 12.42(a) using the two described felonies (neither of which was a state jail felony) for enhancement purposes in each of the cases.

This issue regarding the statutory maximum punishment available at the time of Sutherland's

---

[51]     Citing Acts 1973, 63rd Leg., p.883, ch.399, § 1, eff. Jan.1, 1974.

acceptance of the plea bargain was the only issue potentially reserved for consideration after Sutherland's waiver of appeal incident to his plea agreement.   Whether preserved for appeal purposes, or lost because of either his waiver or his attorney's incompetence, I conclude that it was nonetheless meritless. Sutherland has not, nor can he, establish prejudice either from the Court of Appeals' arguably erroneous dismissal of his appeal or from his attorney's implied negligent failure to preserve the issue for appeal.   His plea bargained sentence was not in excess of the statutorily permitted maximum. Sutherland's argument concerning the applicable sentencing range was meritless.   Counsel cannot be faulted for not advancing a meritless proposition.

Conclusions and Recommendation

Sutherland has failed to show by clear and convincing evidence that his attorney's limited representation of him in the guilty plea proceedings fell below the range of competence Constitutionally demanded of attorneys in criminal cases. Sutherland has failed to show by clear and convincing evidence that his pleas of guilty were not voluntarily, knowingly, and intelligently made. Nor has Sutherland shown by clear and convincing evidence that he was otherwise prejudiced by his trial counsel's lack of preparation for a trial that Sutherland did not want.   Accordingly, based upon the foregoing I recommend to the District Court that Sutherland' petition for habeas corpus in this court be in all things DENIED.

It is so ORDERED, this 17th day of September, 2015.

Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

<u>Standard Instruction to Litigants</u>

A copy of this report containing findings, conclusions and recommendations shall be served on all parties in the manner provided by law.  Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).